**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARI WEISS, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RYDE GROUP LTD; JUNMING TERENCE ZOU; CHEN FEI LANG; TING YONG TAN; SU NEE JOANNE KHOO; WAI HONG POON; VENKATA SUBRAMANIAN S/O SREENIVASAN; KREIT & CHIU CPA, LLP; MAXIM GROUP, LLC; and PUGLISI & ASSOCIATES, INC.<br><br>Defendants. | Civil Action No. 1:26-cv-07854<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT FOR**
**VIOLATIONS OF FEDERAL SECURITIES LAWS**

Plaintiff Shari Weiss ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ryde Group Ltd ("RYDE" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by RYDE; and (c) review of other publicly available information concerning RYDE.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired RYDE securities between March 6, 2024, and September 11, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. RYDE's claimed "vision is to become a "Super mobility app" where multiple mobility tools can be accessed and function seamlessly out of a single app, offering ultimate convenience and reliability for our customers."[1] Specifically, its "core business" consists of "the following segments: (i) mobility, where we provide on-demand and scheduled carpooling and ride-hailing services, matching riders to our driver partners; and (ii) quick commerce, where we provide on-demand, scheduled, and multi-stop parcel delivery services."[2]

---

1 Ryde Group Ltd, Amendment No. 5 to Form F-1 (Form F-1/A-1) (Feb. 12, 2024), https://www.sec.gov/Archives/edgar/data/1971115/000149315224005843/formf-1a.htm.

2 *Id.*

3. The Company was founded in 2014 and is incorporated as an offshore holding company in the Cayman Islands. Its principal place of business is located at Duo Tower, 3 Fraser Street, #08-21, Singapore 189352.

4. This case arises from the sudden collapse of RYDE's stock in September 2024, following a dramatic yet illusory run-up orchestrated by a fraudulent stock promotion scheme propagated over social media.

5. In the weeks and months leading up to the collapse, RYDE's share price surged from an initial public offering ("IPO") price of $4.00 to an all-time high of $22.49 despite no fundamental changes to the Company or news to justify the spike. Investigations and public reports have since revealed that RYDE utilized social media to orchestrate an illicit "pump-and-dump" promotion scheme to defraud investors. These reports detail how impersonators claiming to be legitimate financial advisors touted RYDE in online forums, chat groups, and through social media posts with sensational but baseless claims to create a buying frenzy among retail investors.

6. This sharp rise proved short-lived. On September 11, 2024, RYDE's share price abruptly crashed approximately 75%, to $5.50. Since then, the Company's share price has rapidly declined to approximately $0.50.

7. The structure of RYDE's IPO mirrored that of several other recently listed foreign micro-cap companies implicated in pump-and-dump manipulation such as Ostin Technology Group Co., Ltd. ("OST"), Jayud Global Logistics Limited ("JYD), and China Liberal Education Holdings Ltd ("CLEU"), to name just a few. These offerings were all characterized by unusually low floats (often under 10%), overwhelming insider control via supervoting shares or offshore affiliates, and minimal public disclosures. In each instance, thinly traded shares were aggressively

promoted via impersonator-run WhatsApp or WeChat groups and social media "stock tip" campaigns using the stolen identities of U.S. financial advisors.

8. In the wake of this epidemic, the New York Stock Exchange ("NYSE"), Nasdaq, and the SEC all enacted tighter regulations and oversight on foreign microcap IPOs. Additionally, the Department of Justice ("DOJ") and Public Company Accounting Oversight Board ("PCAOB") have indicted executives and co-conspirators of these "companies" as well as sanctioning their auditors for participating in or enabling the scams. The RYDE IPO shared all these structural hallmarks, yet neither the Registration Statement, Prospectus (collectively, "the Offering Documents"), press releases, nor any subsequent SEC filings made any mention of the substantial market manipulation risk inherent to such offering architecture.

9. Defendants also failed to update investors as warning signs emerged during the Class Period. Before the September 11th collapse, unusual trading activity, outsized price swings, and the circulation of false claims in online investor groups were already public and readily observable. At no point did RYDE issue a cautionary statement alerting investors to these developments or warning that the stock's movement did not reflect Company fundamentals. Instead, Defendants continued to tout the Company's prospects while omitting that the trading environment surrounding RYDE had become highly irregular.

10. In summary, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and the true nature of its securities trading activity throughout the Class Period. Specifically, Defendants failed to disclose to investors that: (1) RYDE was the subject of a fraudulent stock promotion scheme involving social media-based misinformation and impersonated financial professionals; (2) insiders and/or affiliates used offshore or nominee accounts to facilitate the coordinated dumping

of shares during a price inflation campaign; (3) RYDE's public statements and risk disclosures omitted any mention of the false rumors and artificial trading activity driving the stock price; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §8aa).

13. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, Defendants Kreit & Chiu CPA, LLP (the Company's auditor) and Maxim Group, LLC (the IPO underwriter) are headquartered in the district.

14. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15. Plaintiff Shari Weiss, as set forth in the accompanying certification, incorporated by reference herein, purchased RYDE securities during the Class Period, and suffered damages as

a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16. Defendant RYDE is a Cayman Islands Holding Company with its principal executive offices located in Singapore. The Company's common stock trades on the NYSE under the symbol "RYDE."

17. Defendant Junming Terence Zou ("Zou") was the Company's Chief Executive Officer ("CEO") at all relevant times.

18. Defendant Chen Fei Lang ("Lang") was the Company's Chief Financial Officer ("CFO") at all relevant times

19. Defendant Ting Yong Tan ("Tan") was a Director of the Company at all relevant times.

20. Defendant Su Nee Joanne Khoo ("Khoo") was a Director of the Company at all relevant times.

21. Defendant Wai Hong Poon ("Poon") was a Director of the Company until August 22, 2024.

22. Defendant Venkata Subramanian s/o Sreenivasan ("Sreenivasan") was a Director of the Company at all relevant times.

23. Defendant Kreit & Chiu CPA, LLP ("Kreit & Chiu") was the Company's auditor at all relevant times.

24. Defendant Maxim Group, LLC ("Maxim") was the Company's underwriter for the March 6, 2024, IPO and additional offering on September 27, 2024.

25. Defendant Puglisi & Associates, Inc. ("Puglisi") was the Company's agent at all relevant times.

26. Defendants Zou, Lang, Tan, Khoo, Poon, and Sreenivasan (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

27. Defendant Kreit & Chiu (the "Auditor Defendant") issued clean audit opinions on financial statements incorporated into the IPO, and 2023 Form 20-F annual financial statements issued during the Class Period. At all relevant times, the Auditor Defendant had access to material non-public information and because of its position, the Auditor Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were materially false and/or misleading. Furthermore, the Auditor Defendant had the ability and opportunity to prevent issuance of the fraudulent SEC filings or cause them to be corrected. Therefore, it is also liable for the false statements alleged herein.

28. Defendant Maxim (the "Underwriter Defendant") was the "underwriter" as defined by 15 U.S.C. § 80a-2(a)(40) of the Exchange Act for issuance of RYDE securities by way of the IPO consisting of the Registration Statement RYDE filed on February 12, 2024, and Prospectus filed on

March 7, 2024 containing materially false and misleading statements detailed in this complaint. Due to its position, the Underwriter Defendant had the ability and opportunity to prevent issuance of the fraudulent Registration Statement and Prospectus, and/or cause them to be corrected. Therefore, it is also liable for the false statements pled herein.

29. Defendant Puglisi (the "agent Defendant") was the Company's agent for service of process as required by 17 C.F.R. § 249.250 of the Exchange Act for issuance of RYDE securities by way of the registration statements RYDE filed on February 12, 2024, May 17, 2024 and September 13, 2024, as well as prospectus supplements filed on March 7, 2024, August 2, 2024, and September 27, 2024, containing the materially false and misleading statements detailed in this complaint. Due to its position, the agent Defendant had the ability and opportunity to prevent issuance of the fraudulent Registration Statement and Prospectuses, and/or cause them to be corrected. Therefore, it is also liable for the false statements pled herein.

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

30. The Class Period begins on March 6, 2024, when the Company filed a Prospectus permitting RYDE to issue up to 3,000,000 Ordinary Shares at an offering price of $4.00/share for a total capital raise of up to $12,000,000 (the "March'24 Offering"). To describe its business, the Company included the following statement in the Prospectus:

> *Our vision is to become a "Super mobility app" where multiple mobility tools can be accessed and function seamlessly out of a single app, offering ultimate convenience and reliability for our customers. We currently operate in Singapore, with our core businesses in the following segments: (i) mobility, where we provide on-demand and scheduled carpooling and ride-hailing services, matching riders to our driver partners; and (ii) quick commerce, where we provide on-demand, scheduled, and multi-stop parcel delivery services.*
>
> ***Mobility***
>
> *Our mobility business segment includes carpooling and ride-hailing.*

*Carpooling refers to services that connect riders with driver partners who provide rides in a variety of vehicles, such as cars of different seating capacities. Carpooling is about sharing rides and is provided via our RydePOOL service in our mobile app. We launched carpooling through our RydePOOL service in Singapore. RydePOOL allows real-time, on-demand bookings as well as advance bookings via our Schedule Pickup function, and only allows seating capacity for one rider per request, while riders may have to share their ride with other riders.*

*Ride-hailing refers to services that connect riders with private-hire or taxi drivers, with the rider having the option to choose the type of ride from a variety of vehicles, such as cars of different seating capacities and make. We started off with only carpooling services, but ride-hailing services was a natural adjacency for us as we have the technology and the platform to enable it. Our ride-hailing services allow riders to determine the number of seats they require for the trip, and offers real-time, on-demand bookings as well as advance bookings and multi-stop options. We started to grow our offerings in this space and currently have the following different service offerings: RydeX, RydeXL, RydeLUXE, RydeFLASH, RydePET, RydeHIRE, and RydeTAXI services.*

***Quick Commerce***

*Quick Commerce is a package delivery booking service, which enables driver partners to accept bookings for package delivery services through our driver partner app. Our partners that fulfill deliveries range from driver partners, to motorcyclists and walkers as well. Consumers can arrange for instant deliveries and cater for different package sizes. E-commerce businesses, Food and Beverage businesses and social sellers can utilize our last mile delivery services to their customers as an option as well. We provide our quick commerce service through our RydeSEND offering, which comprises of real-time on-demand, scheduled, and multi-stop parcel delivery services.*[3]

31. The March'24 Offering was underwritten by Defendant Maxim, with the prospectus detailing its compensation consisting of "a discount equivalent to seven and a half percent (7.5%) of the gross proceeds of this offering,"[4] as well as "(5%) of the aggregate gross

[3] Ryde Group Ltd, Prospectus (Form 424B4) (March 6, 2024), https://www.sec.gov/Archives/edgar/data/1971115/000149315224009105/form424b4.htm#Ha_002.

[4] *Id.*

proceeds raised" from any investors in the IPO referred by the Underwriter Defendant.[5] To promote the Offering, Maxim published a news release on its website titled *Ryde Group Ltd Announces Pricing of Initial Public Offering* on March 6, 2024 ( the day of the IPO).[6] In the release, Maxim describes the Company, the Offering, and RYDE's business:

> ***Ryde Group Ltd ("Ryde" or the "Company")****, a technology company with a leading platform for mobility and quick commerce in Singapore, announced today the pricing of its initial public offering (the "Offering") of 3,000,000 Class A ordinary shares at a price of US$4.00 per share to the public, for a total of US$12,000,000 of gross proceeds to the Company, before deducting underwriting discounts and other offering expenses.*
>
> ***About Ryde Group Ltd***
>
> *The first carpool app in Singapore, Ryde has revolutionized how people move from point to point. Its mission is to positively impact the lives of all riders and drivers through leveraging technology to better facilitate the movement of people and goods.*
>
> *Ryde provides on-demand and scheduled carpooling and ride-hailing services, connecting riders with drivers. Ryde also provides on-demand, scheduled, and multi-stop parcel delivery services. From its origins as a carpool app, Ryde has expanded to provide a full suite of mobility and delivery options. For more information, please visit: https://rydesharing.com/*[7]

32. The March'24 Offering was made pursuant to an F-1 Registration Statement filed by the Company on February 12, 2024 (the "February'24 Registration Statement").[8] The Frbruary'24 Registration Statement permitted the Company to "offer[] 3,000,000 Class A Ordinary Shares" for an IPO price "between US$4.00 and US$5.00."[9] Additionally, the

---

5 *Id.*

6 Ryde Group Ltd Announces Pricing of Initial Public Offering, MAXIM Group (Mar. 6, 2024), https://www.maximgrp.com/insights/news-press/136/ryde-group-ltd-announces-pricing-of-initial-public-offering.

7 *Id.*

8 Amendment No. 5, *supra*.1.

9 *Id.*

February'24 Registration Statement incorporated the Company's consolidated annual financial statements and unqualified audit opinion of Defendant Kreit & Chiu for the years ended December 31, 2022, and 2021.[10] Furthermore, the Company disclosed in the February'24 Registration Statement that "our consolidated financial statements are prepared and presented in accordance with U.S. GAAP" and it was signed by Defendants Zou, Lang, and Puglisi.[11] Some comparative financial highlights included:

> ***<u>Revenue from mobility and quick commerce</u>***
>
> *Our revenue from mobility and quick commerce was increased marginally by S$428,000 from S$6,174,000 for the year ended December 31, 2021 to S$6,602,000 for the year ended December 2022. As part of our business strategies to drive revenue growth, we provide incentives to entice our driver-partners to join our platform and offer incentives to encourage our consumer usage. If we are unable to manage these incentives effectively, our ability to grow revenues may be adversely impacted. Overreliance on incentives may create dependency among both driver-partners and consumers, posing challenges to our long-term revenue prospects. Our driver-partners who are primarily attracted by the attractive incentives may lose motivation once these incentives are discontinued or reduced. This could lead to a decrease in the availability of drivers-partners, potentially resulting in longer wait times and diminished service quality. Additionally, our consumers who have become accustomed to exclusive promotions may exhibit reduced loyalty and usage when faced with regular rates, thereby impacting our ability to grow our revenue from mobility and quick commerce.*
>
> *Despite the highly competition in Singapore's ride-hailing and quick commerce sector, our revenue from mobility and quick commerce in the first six months of 2023 is remains on par with the same period in 2022.*
>
> ***<u>Factors affecting our performance</u>***
>
> *As part of our business model, we earn revenues from fees from transactions completed by the consumers and driver partner who use our services across our mobility and quick commerce solutions. Therefore our revenue is a function of the number of active customers, including both new and returning, transaction on our Ryde app and the fares/rates that we charge. Therefore the key factors affecting our results include our growing consumer and driver base, their recurring volumes per consumer and the fares/rates we charge, which together underpin our revenue*

---

[10] *Id.*

[11] *Id.*

*growth. Our focus on controlling costs, like incentives to drivers and riders costs and employee expenses supports our profitability and our ability to generate cash and capital.*

33. In the February'24 Registration Statement, the Company also highlighted its financial statements are prepared in conformity with U.S. GAAP stating:

> ***The preparation of consolidated financial statements in conformity with US GAAP*** *requires management to make judgements, estimates and assumptions that affect the application of policies and reported amounts of assets, liabilities, income and expenses. The estimates and associated assumptions are based on historical experience and various other factors that are believed to be reasonable under the circumstances, the results of which form the basis of making the judgements about carrying values of assets and liabilities that are not readily apparent from other sources. Significant accounting estimates reflected in the Company's consolidated financial statements include, but are not limited to, impairment of long-lived assets, and allowance for credit losses on receivables, provision for expired credit. Actual results may differ from these estimates.*

34. Lastly, the February'24 Registration Statement further highlighted the intended use of proceeds from the IPO, which included expanding operations in Southeast Asia:

> *We estimate that we will receive net proceeds from this offering of approximately US$11.1 million, or approximately US$13.1 million if the underwriter exercises its option to purchase additional Class A Ordinary Shares in full, after deducting underwriting discounts and commissions and the estimated offering expenses payable by us. These estimates are based upon an assumed initial offering price of US$4.50 per Class A Ordinary Share, the mid-point of the estimated range of the initial public offering price shown on the front cover page of this prospectus. Each US$1.00 increase (decrease) in the assumed initial public offering price of US$4.50 per Class A Ordinary Share would increase (decrease) the net proceeds of this offering by US$2.5 million, or approximately US$2.9 million if the underwriter exercises its option to purchase additional Class A Ordinary Shares in full.*
>
> *The primary purposes of this offering are to create a public market for our shares for the benefit of all shareholders, retain talented employees by providing them with equity incentives and obtain additional capital. We plan to use the net proceeds of this offering as follows:*
>
> - *approximately 15% for market expansion in Southeast Asia and other countries, such as Australia and New Zealand;*
>
> - *approximately 20% for research and development of technology products and services offerings on mobile and web-based platforms;*

- *approximately 20% for marketing and brand building activities; and*
- *the remainder for working capital and other general corporate purposes.*

35. On March 8, 2024, the Company filed a 6-K Press Release announcing the IPO was closed, with all shares having been sold, and $12,000,000 in capital having been raised.[12]

36. On April 23, 2024, the Company filed a S-8 Registration Statement (the "S-8 Registration Statement") announcing registration of 1,557,104 Class A ordinary shares to be reserved for issuance to insiders as part of a share incentive plan.[13] The Auditor Defendant expressly consented to its Opinion on the IPO Registration Statement being incorporated into the S-8 Registration Statement as well stating, "We hereby consent to the incorporation by reference in this Registration Statement on Form S-8 of Ryde Group Ltd of our report dated May 5, 2023."[14]

37. On April 29, 2024, the Company filed its Form 20-F Annual Financial Statements with the SEC for the year ended December 31, 2023 (the "2023 20-F").[15] There, the Company reiterated the overview of its business first disclosed in the IPO including that "[o]ur vision is to become a 'Super mobility app'" and that "[w]e believe that the key to the success of our platform is our large network of driver partners and consumers, proprietary technology, operational excellence, and service expertise."[16] Furthermore, comparative financial results for the years

---

[12] Ryde Group Ltd Announces Closing of Initial Public Offering, SEC Ex. 99.1 (Mar. 8, 2024), https://www.sec.gov/Archives/edgar/data/1971115/000149315224009344/ex99-1.htm.

[13] Ryde Group Ltd, Registration Statement (Form S-8) (April 22, 2024), https://www.sec.gov/Archives/edgar/data/1971115/000149315224015604/forms-8.htm.

[14] Kreit & Chiu, Consent of Independent Registered Public Accounting Firm, SEC Ex. 23.1 (April 22, 2024), https://www.sec.gov/Archives/edgar/data/1971115/000149315224015604/ex23-1.htm.

[15] Ryde Group Ltd, Annual Report (Form 20-F) (Apr. 26, 2024), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001971115/000149315224016793/form20-f.htm.

[16] *Id.*

ended 2023, 2022, and 2021 were detailed and certified by Defendant Zou. Finally, the 2023 20-F contained the certified opinion of the Auditor Defendant attesting to the accuracy of the financial statements, and their conformity to Generally Accepted Accounting Principles ("GAAP") as well as Public Company Accounting Oversight Board ("PCAOB") standards for the years ended December 31, 2023, and 2022.[17]

38. The aforementioned statements identified herein were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, prospects, and promotion of the Company. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects in both public filings and through targeted social media advertising were materially misleading and/or lacked a reasonable basis.

**AUDITOR DEFENDANT ALLEGATIONS**

39. The unqualified 2021, 2022, and 2023 audit opinions of the Auditor Defendant were incorporated into the Registration Statement, prospectuses, and other "offerings" of securities the Company filed during the Class Period. In each of those opinions, the Auditor Defendant certified that, "in our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the company" and that "[w]e conducted our audits in accordance with the standards of the PCAOB" and "in accordance with the auditing standards generally accepted in the United States of America" which "require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free of

---

17 *Id.*

material misstatement, whether due to error or fraud."[18] It goes on to affirm the procedures it performed stating:[19]

> *We conducted our audits in accordance with the* ***standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether due to error or fraud.*** *The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. As part of our audits, we are required to obtain an understanding of internal control over financial reporting, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion.*
>
> ***Our audit included performing procedures to assess the risks of material misstatement of the consolidated financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements. Our audits also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that our audits provide a reasonable basis for our opinion.***

40. These unqualified audit opinions incorporated into the Registration Statements, Prospectuses, and other offerings of securities were false and misleading because RYDE's consolidated financial statements were not prepared in accordance with GAAP nor PCAOB requirements.

41. In issuing unqualified audit opinions on RYDE's financial statements-despite these GAAP and PCAOB violations-the Auditor Defendant failed to comply with the professional standards dictated by the PCAOB. These required the Auditor Defendant to exercise due professional care in the performance of the audit and to obtain competent, sufficient evidentiary

---

[18] Amendment No. 5, *supra* n.1.; *see also* Ryde Group Ltd, Annual Report, Form 20-F (Dec. 23, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001971115/000149315224016793/form20-f.htm

[19] *Id.*

matter to form a basis for its opinion, and to obtain reasonable assurances that the financial statements were free from material misstatement, whether caused by error or fraud.[20]

42. In conducting its audits, the Auditor Defendant had access to the files and key employees of the Company at all relevant times. As RYDE's auditor, the Auditor Defendant had continuous access to and knowledge of the Company's confidential internal, corporate, financial, operating, and business information, and had the opportunity to observe and review RYDE's business and accounting practices, and to test the Company's internal accounting information and publicly reported financial statements as well as RYDE's internal controls and structures. Thus, had the Auditor Defendant complied with PCAOB standards, it would have determined that there was no reasonable basis for its unqualified audit reports because, among other things, the Auditor Defendant was aware of undisclosed facts tending to seriously undermine the accuracy of its audit reports, and the Company's reported financial metrics.

**THE TRUTH EMERGES**

43. At its peak price on September 11, 2024, RYDE's stock reached $22.49 per share, representing a more than 500% increase from its trading price just weeks earlier. With over 40 million shares issued or outstanding at that time, the Company's market capitalization was approximately $900 million.

44. During aftermarket trading hours, on September 11, 2024, RYDE's stock price abruptly crashed by approximately 75%. Investigations and public reports have since revealed that RYDE's stock was used as the primary vehicle for an illicit "pump-and-dump" promotion scheme. Impersonators touted RYDE in online forums, chat groups, and social media posts with sensational

---

[20] PCAOB, *AS 1000: General Responsibilities of the Auditor in Conducting an Audit*, https://pcaobus.org/oversight/standards/auditing-standards/details/as-1000--general-responsibilities-of-the-auditor-in-conducting-an-audit [https://perma.cc/S4PV-DDED].

but baseless claims to create a buying frenzy among retail investors. The structure of RYDE's public listing and float were purposefully designed by Defendants to make the scam possible.

45. Here, Plaintiff was a victim of this fraudulent campaign. Specifically, after clicking on a Facebook ad in July 2024 promoting Tom Marsico—head of a legitimate Denver, CO-based investment advisory firm— she was funneled into a WhatsApp group (the "Group") titled "Cathie Wood Investment Club." In this WhatsApp group Plaintiff was instructed to buy and hold large quantities of RYDE stock during the Class Period. The messages included specified purchase prices, number of shares to purchase, hold times, and promised triple-digit "5star" returns. However, in reality, this was merely a theft orchestrated by Defendants and their co-conspirators. Below are examples of the WhatsApp conversations used to perpetrate the fraud:

7/22/24, 1:33 PM - Messages and calls are end-to-end encrypted. Only people in this chat can read, listen to, or share them. Learn more.
7/22/24, 1:34 PM - Shari Weiss: Hello, I would like to know more about stock investment information

Interested in the Cathie wood group only. Thx
7/22/24, 1:40 PM - +1 (504) 314-9768: Hi, nice to meet you, I am an investment assistant of Marsico, I am Ashley, through the recommendation and introduction of Cathie Wood, our organization is now leading the group. If you are here to receive high-yield US stock transactions and learn investment skills in US stocks, you can click on the group link below to learn more
👇👇👇👇👇
https://chat.whatsapp.com/LubKsp6uJBqAMUXyNVPsPt
7/22/24, 2:59 PM - +1 (504) 314-9768: I see you've joined a study group. In order to better cooperate in the future, I would like to have a better understanding of you. What should I call you?
7/23/24, 6:21 AM - +1 (504) 314-9768: IMG-20240723-WA0002.jpg (file attached)
🔥🔥Strong trading strategy for US stocks on July 23🔥🔥

Stock code: RYDE

Specified purchase price: $17.40

Number of shares purchased: 2873 shares

Order type: limit type order

Expected return: 180%-320%

Today's return: 10%-30%

⚠️⚠️Buy at the limit price of $17.40 so that profits can be maximized first. After completing the purchase, remember to take a screenshot and send it to me to confirm whether it is correct to ensure that there are no errors in the transaction.
9/9/24, 7:19 AM - Shari Weiss: IMG-20240909-WA0000.jpg (file attached)
9/9/24, 7:20 AM - Shari Weiss: No need to answer now, but I thought rocket 5 was AWH
9/9/24, 7:20 AM - Shari Weiss: That was the stick I was following for entry.
9/9/24, 7:36 AM - Shari Weiss: Stock...
9/9/24, 8:10 AM - +1 (504) 314-9768: OK, now you just need to wait patiently for the order to be filled. Please do not cancel or change the order privately to ensure a smooth transaction.
9/9/24, 10:17 AM - Shari Weiss: I am. Why did the stock switch from awh to ryde?
9/9/24, 10:20 AM - +1 (504) 314-9768: AWH is just a stock testing the market
9/9/24, 10:22 AM - Shari Weiss: Gotcha! What is special about awh to test the market?
9/9/24, 10:24 AM - +1 (504) 314-9768: We are just testing whether the rising ability is consistent with our expectations, so that our value investment can rise more steadily and achieve our expected profits.
9/9/24, 12:14 PM - Shari Weiss: Anything expected to happen in last hour?

Should the limit change for afterhours?
9/9/24, 12:14 PM - +1 (504) 314-9768: No, you just need to wait patiently
9/9/24, 12:16 PM - Shari Weiss: Keep the order open for afterhours?
9/9/24, 12:17 PM - +1 (504) 314-9768: Yes, our order will be executed today. Please rest assured that this is our accurately calculated buying price
9/9/24, 12:42 PM - +1 (504) 314-9768: The price has reached $17.40. Has your order been executed?
9/9/24, 12:45 PM - Shari Weiss: Yes. It filled.

So hold overnight - wait for next signal?
9/9/24, 12:49 PM - +1 (504) 314-9768: OK, please take a screenshot and send it to me.
9/9/24, 12:49 PM - +1 (504) 314-9768: yea
9/9/24, 12:56 PM - Shari Weiss: IMG-20240909-WA0001.jpg (file attached)
Screenshot of 50k

Stock code: RYDE

⚠️Specified purchase price: $20.20

Number of shares purchased: 7425 shares

⚠️Order type: limit order

⚠️⚠️Buy at the limit price of $20.20 to maximize profits first. After completing the purchase, remember to take a screenshot and send it to me to confirm whether it is correct to ensure that the transaction is correct.
9/10/24, 6:38 AM - +1 (504) 314-9768: If the order is successfully placed, please send me a screenshot.
9/10/24, 6:38 AM - +1 (504) 314-9768: 19.90
9/10/24, 6:40 AM - +1 (504) 314-9768: If your order is not filled, set 19.90
9/10/24, 6:40 AM - Shari Weiss: New price is 19.9
9/10/24, 6:40 AM - Shari Weiss: Ok
9/10/24, 6:40 AM - +1 (504) 314-9768: Please send me a screenshot after the setup is completed
9/10/24, 7:02 AM - Shari Weiss: IMG-20240910-WA0000.jpg (file attached)
I had to break the qty up bc Schwab would not allow full qty in one order bc of cash on hold.
I'm waiting for 625 to fill. The time filled is" last activity" column.
9/10/24, 7:18 AM - +1 (504) 314-9768: OK, please wait patiently for the order to be filled. Please do not cancel or modify the order without permission.
9/10/24, 10:34 AM - +1 (504) 314-9768: With yesterday's increase of more than 15%, the stock is very consistent with our agency's prediction last week, because it was bought after the re-oscillation last week, which is also to reduce the risk of investment! This will be more stable, and we have broken through the upward pressure point of 20USD after our purchase yesterday, which means that the stock's upward burst is very strong!
9/10/24, 11:50 AM - Shari Weiss: I get it. Holding a over 20 all day is great news.
9/10/24, 11:51 AM - Shari Weiss: Do they expect more bursts or just somewhat steady rise to 40s,50s, 60s or 70s 🤞?
9/10/24, 12:00 PM - +1 (504) 314-9768: $55-$70
9/10/24, 12:58 PM - +1 (504) 314-9768: The price has just reached $19.90. Has your order been executed?
9/10/24, 1:36 PM - Shari Weiss: IMG-20240910-WA0001.jpg (file attached)

Stock code: RYDE

Limit price: $21.55

Expected return: 180%-320%

Today's return: 10%-30%
9/11/24, 6:48 AM - +1 (504) 314-9768: ⚠️⚠️Buy at the limit price of $21.55 to maximize profits first. After completing the purchase, remember to take a screenshot and send it to me to confirm whether it is correct and ensure that the transaction is correct.
9/11/24, 6:48 AM - +1 (504) 314-9768: 3248 shares
9/11/24, 7:59 AM - +1 (504) 314-9768: Have you placed an order?
9/11/24, 8:42 AM - Shari Weiss: Yes. I have filled almost 2900 shares. Placing more after the wire. I'll send data soon
9/11/24, 8:59 AM - +1 (504) 314-9768: OK, you can send me a screenshot of the limit price when you have time. Did you only buy 2900 shares today? Or did you buy 3248 shares and 2900 shares?
9/11/24, 9:01 AM - Shari Weiss: Only 2900 now. That's all of the cash available I had at open. The wire will allow me to buy more.
9/11/24, 9:02 AM - +1 (504) 314-9768: OK, when you have more funds to continue the limit trade at 21.55, you can contact me before trading.
9/11/24, 9:02 AM - +1 (504) 314-9768: Please send me a screenshot when you have time.
9/11/24, 10:22 AM - +1 (504) 314-9768: It is expected that the price of RYDE will reach between $28 and $30 before the close of Friday, and will continue to rise by 20-30% every day next week, so it is still the best purchase price. When your funds arrive, you can continue to buy RYDE at 21.55, so that you will be able to get the maximum profit when we sell it next Friday.
9/11/24, 11:34 AM - Shari Weiss: The order was placed about 45 min ago and should arrive soon. Thx
9/11/24, 11:35 AM - +1 (504) 314-9768: The 2,900 shares placed 45 minutes ago?
9/11/24, 11:36 AM - +1 (504) 314-9768: You can take a screenshot and send me the order you placed today
9/11/24, 11:56 AM - +1 (504) 314-9768: Can limit orders be sent to me?
9/11/24, 12:27 PM - +1 (504) 314-9768: If your order has been successfully executed, please take a screenshot and send it to me

46. Other victims have posted similar evidence during the class period demonstrating just how pervasive the fraudulent scheme was:[21]

[21] Edwin Dorsey, *See how scammers operate*, StopNasdaqChinaFraud.com (Aug. 7, 2025), https://www.stopnasdaqchinafraud.com/?tickers=RYDE.



~Vincent Willyard +1 (986) 273-9766

【Important Notice】

Dear group members, regarding the release arrangements of this trading signal, we are hereby officially notified as follows:

Considering the sensitivity and confidentiality requirements of trading signals, this signal will not be released directly in the group chat. In order to ensure that every investor can obtain trading signals in a timely and accurate manner, please be sure to maintain close communication with Investment Assistant Betty Daniels at 9:25 am.

IMPORTANT NOTE:

Contact: Betty Daniels, Investment Associate

Contact time: 9:25 am today (please prepare a few minutes in advance)

Signal receiving method: Betty Daniels will deliver trading signals to every investor who has registered to participate in sky 5 through one-on-one private messages or phone calls.

Transaction execution: Please strictly follow the stock price provided by Betty Daniels and submit your transaction order in the form of a Limit Order.

Please pay great attention to this notice and ensure that you establish effective contact with Betty Daniels at the designated time to avoid missing out on good trading opportunities. If you have any questions or need assistance, please be sure to communicate and coordinate with Betty Daniels in advance. 9:01 AM

Important Notice!!!

Regarding this value investment in US stocks (RYDE), a large amount of short-selling



Regarding this value investment in US stocks (RYDE), a large amount of short-selling funds were sold during the transaction, causing the stock price to fall sharply. However, our investment team is currently holding an emergency meeting to formulate a plan to increase the stock price. There is no need to panic at present. 3:39 PM

Before formulating the latest stock price increase plan, our company needs to first count the specific number of RYDE shares currently held by all investors, as well as the specific total holding amount. In this way, my investment team and I can more accurately calculate the bottom price to ensure that everything goes smoothly in the subsequent trading plan. Therefore, all investors are requested to cooperate with assistant Betty Daniels to complete the statistics on RYDE holdings in the US stock. 3:43 PM

Hello! My name is Vincent Willyard. You may be very worried about the current stock price, so I hereby issue this notice to clarify our company's operating strategy and market dynamics during the current market adjustment period. In order to further optimize the market structure and improve the fairness and transparency of transactions, our company is carrying out institutional wash-out work in an orderly manner. The core goal of this wash-out is to clear out those investors who do not follow our official trading signals to ensure that the market operates stably based on unified and clear signals and promote the healthy development of the market. Therefore, investors who have bought according to our signals, please remain patient and continue to hold your RYDE shares.

At the same time, the market stock price has been adjusted back to a low level during the current wash-out stage, which provides us with valuable buying opportunities. If you still have available trading funds tomorrow, I suggest that you increase your position tomorrow to gain more profits. Tomorrow I will provide you with more accurate buying price suggestions based on the latest market dynamics. Please believe that as long as we decisively start at a low level tomorrow and patiently wait for the stock price to rise, we will surely reap more substantial profit returns. Thank you for your understanding and support, and look forward to witnessing the prosperity and development of the market with you! 6:42 PM

47. Then on September 9, 2024—two days before the crash— Nathan Anderson, founder of Hindenburg Research, a leading forensic financial research authority, published the following message on his X account warning the public that RYDE had "all the hallmarks" of a pump-and-dump fraud:[22]

---

[22] Anderson, Nate (@NateHindenburg) Ryde Group Ltd, *X* (Sept. 9, 2024, 12:44 pm), https://x.com/NateHindenburg/status/1833229966487785638.




48. On September 11, 2024, Mr. Anderson's warning was proven accurate. In his X posts that day he outlines how RYDE shares "plummeted 80% in an hour, from $22 to about $4.60, after weeks of wash-trading and coordinated pumping in chat rooms.":[23]

[23] Anderson, Nate (@NateHindenburg) Ryde Group Ltd, *X* (Sept. 11, 2024, 1:32 pm), https://x.com/NateHindenburg/status/1833966839287660817




49. Mr. Anderson goes on to provide an example of a WhatsApp chat used to pump RYDE's stock, just like the one Plaintiff fell victim to:[24]




50. Together, the facts alleged by Plaintiff and other class members, along with news releases like those of Mr. Anderson prove that throughout the Class Period, RYDE's stock price

---

24 Anderson, Nate (@NateHindenburg) Chinese companies scamming, *X* (Sept. 11, 2024, 9:14 am), ttps://x.com/NateHindenburg/status/1833901922727899353.

was artificially inflated through coordinated social media campaigns which disseminated materially false and misleading information about the Company. Through these campaigns, impersonators using stolen identities of legitimate financial advisors lured victims through Facebook/Instagram ads into private investor chat groups on platforms like WhatsApp/Messenger/WeChat Threads to circulate unfounded news and generate excitement and raise buying pressure of RYDE stock.

51. The statements made by impersonators had no legitimate basis in the Company's actual operations or financial condition, yet they were presented as authoritative tips to lure retail investors into purchasing RYDE shares at inflated prices. By peddling fabricated prospects of imminent corporate success, the scheme misled investors about RYDE's value and created artificial demand for the stock. RYDE's IPO and low float were purposefully and/or recklessly designed by Defendants to enable this fraudulent scheme to be effectuated.

## REGULATORY ACTIONS

52. Recently, regulators identified this recurring "pump-and-dump" pattern in offshore micro-cap IPOs and took action to stop it.

53. On September 3, 2025, Nasdaq issued a press release detailing proposed changes to its listing standards in response to "emerging patterns associated with potential pump-and-dump schemes in U.S. cross-market trading environments."[25] Specifically, "[t]he revised standards include:

- a $15 million minimum market value of public float, applicable to new listings on Nasdaq under the net income standard;

---

25 ***Nasdaq Proposes Changes to its Listing Standards*, NASDAQ (Sept. 3, 2025),** https://ir.nasdaq.com/news-releases/news-release-details/nasdaq-proposes-changes-its-listing-standards.

- an accelerated process for suspending and delisting companies with a listings deficiency that also have a Market Value of Listed Securities below $5 million; and
- a $25 million minimum public offering proceeds requirement for new listings of companies principally operating in China.

54. The article goes on to explain that "Nasdaq will continue to actively refer cases to the Securities and Exchange Commission ([“]SEC[”]) and the Financial Industry Regulatory Authority ([“]FINRA[”]) on potentially manipulative trading activities, while strengthening our cooperation with both domestic and international regulators to reinforce effective oversight and maintain high standards across U.S. markets." As a whole, the proposed rule changes by Nasdaq demonstrate how well known and pervasive foreign micro-cap IPOs like RYDE were over the Class Period. Therefore, Defendants purposefully engaged in, conspired to engage in a pump-and-dump of RYDE's stock, and/or recklessly disregarded a substantial likelihood it would be used to perpetrate one.

55. On September 5, 2025, the SEC issued a press release announcing "Formation of Cross-Border Task Force to Combat Fraud."[26] The release specifically identifies "auditors and underwriters" as "gatekeepers" who enable "'pump-and-dump' and 'ramp-and-dump' schemes" perpetrated by "foreign based companies" including "China" as targets of the new task force. Paul S. Atkins, Chairman of the SEC was quoted in the September 5th release stating:

> *we will not tolerate bad actors – whether* ***<u>companies, intermediaries, gatekeepers</u>*** *or exploitative traders –* ***<u>that attempt to use international borders to frustrate and avoid U.S. investor protections</u>****. This new task force will consolidate SEC*

[26] ***SEC Announces Formation of Cross-Border Task Force to Combat Fraud*****, SEC (Sept. 5, 2025),**

https://www.sec.gov/newsroom/press-releases/2025-113-sec-announces-formation-cross-border-task-force-combat-fraud.

*investigative efforts and allow the SEC to* ***use every available tool to combat transnational fraud****.”*

Overall, the SEC press release reinforces just how omnipresent foreign-based microcap IPO frauds like RYDE were throughout the Class Period. Again, this demonstrates that Defendants purposefully engaged in, conspired to engage in a pump-and-dump of RYDE's stock, and/or recklessly disregarded a substantial likelihood it would be used to perpetrate one.

56. On December 18, 2025, the SEC officially approved Nasdaq's proposed rule changes.[27]

57. On September 10, 2025, the Department of Justice ("DOJ") unsealed an indictment in the Eastern District of Virginia charging executives of OST with securities and wire fraud as well as conspiracy to commit securities fraud and wire fraud, for orchestrating the Ostin pump-and-dump scheme identical to RYDE.[28]

58. The indictment alleges that the defendants, along with their co-conspirators, engaged in a fraudulent scheme to artificially inflate the price and trading volume of Ostin stock through social media and messaging service applications, including promotions that impersonated advisors and financial professionals. The government details how the defendants inflated the market capitalization of Ostin from $22 million to more than $1 billion. As the stock price rose, the defendants opened brokerage accounts that were used to sell millions of shares that were

[27] [Release No. 34-104450; File No. SR-NASDAQ-2025-068] *Self-Regulatory Organizations; The Nasdaq Stock Market LLC; Notice of Filing of Amendment No. 1 and Order Granting Accelerated Approval of a Proposed Rule Change, as Modified by Amendment No. 1, to Modify Certain Initial Listing Requirements*, SEC (Dec. 18, 2025), https://www.sec.gov/files/rules/sro/nasdaq/2025/34-104450.pdf.

[28] *Co-CEO of Chinese Publicly Traded Technology Company and Financial Advisor Indicted for Over $100M Securities Fraud Scheme*, DOJ (Sept. 12, 2025), https://www.justice.gov/opa/pr/co-ceo-chinese-publicly-traded-technology-company-and-financial-advisor-indicted-over-100m.

obtained through non-*bona fide* securities offerings and resulted in members of the conspiracy fraudulently obtaining more than $110 million in proceeds from the sale of the stock. These offerings were structured to give the appearance of legitimate financing but were, in fact, used to funnel shares into nominee accounts later used for dumping.

59. On December 4, 2025, OST's auditor, TPS Thayer, LLC, was sanctioned by the PCAOB after finding for a fact that Thayer's 2020, 2021, and 2022 audits of OST knowingly violated both PCAOB Auditing Standards, and the Sarbanes-Oxley Act of 2002 (the "Act").[29] RYDE's auditor, Kreit & Chiu, made these same knowing and/or purposeful violations and were key enablers of the pump and dump scam. As the SEC explained, "gatekeepers, particularly auditors and underwriters, […] help these companies access the U.S. capital markets."[30] Therefore, without these fraudulent audit opinions, companies like RYDE could not have registered their securities for sale and Defendants executed their fraudulent scheme.

60. In summary, the updates to Nasdaq's rules, SEC task force, DOJ indictment of OST executives, and PCAOB sanctioning of OST's auditor demonstrate just how pervasive foreign microcap IPO fraud was throughout the Class Period. Despite these obvious risks, Defendants proceeded with the RYDE IPO and continued to promote investment in the Company. Therefore, Defendants purposefully engaged in, conspired to engage in a pump-and-dump of RYDE's stock, and/or recklessly disregarded a substantial likelihood it would be used to perpetrate one.

## CLASS ACTION ALLEGATIONS

---

[29] *Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions In the Matter of TPS Thayer LLC*, PCAOB (Dec. 4, 2025), https://assets.pcaobus.org/pcaob-dev/docs/default-source/enforcement/decisions/documents/105-2025-037-tps.pdf?sfvrsn=41d4ed02_2.

[30] *SEC Announces Formation of Cross-Border Task Force to Combat Fraud*, SEC (Sept. 5, 2025), https://www.sec.gov/newsroom/press-releases/2025-113-sec-announces-formation-cross-border-task-force-combat-fraud.

61. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired RYDE securities between March 6, 2024, and September 11, 2024, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

62. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RYDE's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of RYDE shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by RYDE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

64. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

65. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of RYDE; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

66. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

67. The market for RYDE's securities was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, RYDE's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired RYDE's securities relying upon the integrity of the market price of the Company's securities and market information relating to RYDE and have been damaged thereby.

68. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of RYDE's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false or misleading. The statements and omissions were materially false and/or

misleading because they failed to disclose material adverse information and/or misrepresented the truth about RYDE's business, operations, and prospects as alleged herein.

69. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about RYDE's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

70. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

71. During the Class Period, Plaintiff and the Class purchased RYDE's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

72. As alleged herein, Defendants acted with scienter since Defendants: (1) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; (2) knew that such statements or documents would be issued or disseminated to the investing public; and (3) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding RYDE, their control over, and/or receipt and/or modification of RYDE's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning RYDE, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

73. The market for RYDE's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, RYDE's securities traded at artificially inflated prices during the Class Period. On September 11, 2024, the Company's share price reached a Class Period-high of $22.49 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of RYDE's securities and market information relating to RYDE and have been damaged thereby.

74. During the Class Period, the artificial inflation of RYDE's shares was caused by the material misrepresentations and/or omissions particularized in this complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about RYDE's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of RYDE and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

75. At all relevant times, the market for RYDE's securities was an efficient market for the following reasons, among others:

(a) RYDE's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, RYDE filed periodic public reports with the SEC and/or the NYSE;

(c) RYDE regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) RYDE was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

76. As a result of the foregoing, the market for RYDE's securities promptly digested current information regarding RYDE from all publicly available sources and reflected such information in RYDE's share price. Under these circumstances, all purchasers of RYDE's securities during the Class Period suffered similar injury through their purchase of RYDE's securities at artificially inflated prices and a presumption of reliance applies.

77. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

78. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of RYDE who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5(a) and (c) Promulgated Thereunder**
**Against All Defendants**

79. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

80. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly, or recklessly: (i) employed devices, schemes or artifices to defraud; and (ii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

81. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about RYDE's financial well-being and prospects, as specified herein.

82. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of RYDE's value and performance and

continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about RYDE and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

83. Each of the Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

84. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing RYDE's financial well-being and prospects from the investing public and

supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

85. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of RYDE's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly upon the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired RYDE's securities during the Class Period at artificially high prices and were damaged thereby.

86. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that RYDE was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their RYDE securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

87. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 (a) and (c) promulgated thereunder.

88. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

89. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

90. Individual Defendants acted as controlling persons of RYDE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

92. As set forth above, RYDE and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: September 10, 2026

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ Patrick Donovan
Benjamin Y. Kaufman
Patrick Donovan

270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
kaufman@whafh.com
donovan@whafh.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Shari Weiss, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the complaint in this action and authorized Wolf Haldenstein Adler Freeman & Herz LLP to file a lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of all persons and entities that purchased, or otherwise acquired, shares of Ryde Group Ltd., ("RYDE").

3. During the relevant period, I purchased and/or sold the security that is the subject of the complaint, as set forth in the attached **Schedule A.**

4. I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5. During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private action arising under the Securities Act or the Exchange Act.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, expert for such reasonable costs and expenses (including lost wages) directly related to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9/4/2026.

Shari Weiss

Shari Weiss

**Schedule A to Certification of Shari Weiss**
**Ryde Group Ltd.**

**Purchases**

| Date | Number of Shares | Price per Share |
|---|---|---|
| 09/09/2024 | 2,873 | $17.40 |
| 09/09/2024 | 1 | $17.56 |
| 09/10/2024 | 115 | $19.00 |
| 09/10/2024 | 625 | $19.90 |
| 09/10/2024 | 1,000 | $19.90 |
| 09/10/2024 | 1,000 | $19.90 |
| 09/10/2024 | 1,000 | $20.20 |
| 09/10/2024 | 2,800 | $20.20 |
| 09/10/2024 | 1,000 | $20.20 |
| 09/10/2024 | 300 | $20.00 |
| 09/10/2024 | 500 | $20.20 |
| 09/10/2024 | 100 | $20.20 |
| 09/10/2024 | 500 | $19.90 |
| 09/10/2024 | 500 | $20.05 |
| 09/11/2024 | 10 | $21.55 |
| 09/11/2024 | 2 | $21.55 |
| 09/11/2024 | 375 | $21.00 |
| 09/11/2024 | 500 | $20.90 |
| 09/11/2024 | 500 | $19.50 |
| 09/11/2024 | 300 | $19.97 |
| 09/11/2024 | 750 | $18.25 |
| 09/11/2024 | 500 | $19.25 |
| 09/11/2024 | 150 | $18.25 |
| 09/11/2024 | 300 | $19.50 |
| 09/11/2024 | 200 | $20.00 |
| 09/11/2024 | 6 | $21.55 |
| 09/11/2024 | 120 | $19.40 |
| 09/11/2024 | 500 | $19.30 |
| 09/11/2024 | 500 | $19.87 |
| 09/11/2024 | 500 | $19.75 |

**Sales**

| Date | Number of Shares | Price per Share |
| --- | --- | --- |
| 09/10/2024 | 115 | $21.05 |
| 09/10/2024 | 300 | $21.02 |
| 09/10/2024 | 500 | $23.00 |
| 09/10/2024 | 500 | $21.06 |